Chief Justice Robertson
delivered the Opinion of the Court.
Miller, holding a bond on Williamson’s Heirs for the conveyance of the legal title to a tract of land, for a price which he had paid, assigned it to Robert Eastin, for a valuable consideration, agreed to be paid in instalments.
Sometime after the assignment, Eastin covenanted to build for Miller a brick house, in consideration of about one thousand dollars, to be credited on his notes for the price of the land, as soon as the work should be finished; and Miller reserved an express lien on the equitable interest in the land, as a collateral security for the building of the house.
After the date of that agreement, Eastin assigned the title bond to Babcock and Payne, who undertook to have the house built; employed James W. Eastin to build it, and advanced to him two hundred and thirty five dollars. Afterwards, being about to leave the State, and the house not having been built or begun, they delivered to Miller, James W. Eastin’s covenant, with his receipt for the two hundred and thirty five dollars, removed from the State, and assigned to the plaintiff, Royal, the bond for the title to the land.
The house never having been built, Miller filed a bill in chancery for enforcing his express lien; and after- *56 wards, in an amended bill, asserted a pre-existent implied lien on the equitable right to the land which he had transferred by his assignment to Robert Eastin, and made Royal, Williamson’s Heirs and others defendants.
Decree of the Circuit Court.
~ Vendor of land, held by an equitable title, (available without further act on his part,) has an implied lien for the purchase money due him, that may tie enforced, even against a remote assignee nf tV*/a fífli»
Vendor of landholding an imphed lien, — by a new contract, changesthemode °f payment_ of part of the price, aud reserves for press^lienT this does not impair dther PmayllTe enforced.
An assignee who paid the consideration for the assignment of a title bond, without notice of an assignors lien on the land, will no the affected by such lien.
The assignee of a covenant for a conveyance has a right in equity, as against the covenantor, and also, aright purely legal, against the assignor. — >
On the hearing the Circuit Court decreed the sale of the land, for the purpose of paying the thousand dollars, with legal interest from the date of the agreement for building the house; and that decree is now called in question.
This court has frequently decided, that a vendor of an equitable title to land may, if his equity when sold was perfect and available without any further act on his part, be entitled to an implied equitable lien for the price, and may enforce that lien against even a remote assignee of the covenant for a title. And this doctrine is still approved in its application to a proper case.
In this case, however, it is not material whether Mil]el> should rely on his express lien, or on a lien resulting by implication from the sale of 'his equitable title with-0U£ any 0ther security; for either would be entitled to J , the same enect, to the extent ox so much oí the consideratjon for assignment as was to be credited for the 0 building of the house, because the express lien for securin£ building of the house merely, should not be deemed to have destroyed or waived the implied lien for securing the payment of the consideration of the assignment, and each ljen, if enforced, would produce the same amount of that consideratioh.
But, whatever else may appear, unless Royal — if he paid a valuable consideration for the assignment to himself — had notice of the lien prior to the payment and the assignment, he cannot be affected. It is trae that he holds hut an equitable intei'est in the land; and it may he admitted that, between conflicting epuities in the same thing, that which is prior in time will he preferred. But there is no such conflict between Royal’s equity and that of Miller. They do not both claim an indepexident equity in the same thing. Royal’s equity is a claim to a specific execution of the covenant which Miller sold and assigned away. Miller’s only equity is a lien on the interest which he assigned. Royal’s equity is against Wil* *57 liamson’s Heirs. Miller’s equity is against Royal. By his assignment, Miller transferred the legal right to all the interest which he had held in the land, and can now have only a lien on the interest thus transferred. Royal is a derivative purchaser from Miller, of that interest, and holds a legal title to it. As against Williamson’s Heirs, who have the legal title to the land, Royal holds only an equity; but as against Miller, his right, in virtue of the statute of 1798, regulating assignments of choses in action, is altogether and perfectly legal. That statute reserves to the covenantor, against the assignee of his covenant, all the equity to which he was, before notice of the assignment, entitled against the covenantee and assignor; but it does not save any equity of the assignor. Miller’s equity — being a lien only on the equitable right which he sold and assigned, and -the legal title to which was after-wards vested in Royal — cannot be enforced by a decree for selling the equitable right thus assigned, and the legal title to which was thus transferred, unless Royal, if he purchased it for a valuable consideration, had notice of the equitable lien; because, as between Miller and himself, he holds the legal title to that to which Miller asserts an equity: that is, Miller's equitable right to a conveyance from Williamson’s Heirs, and which he sold to Eastin. Their equities are not conflicting claims to the same thing, and against the same party.
The right of an assignor of a hond for land, to enforce an implied lien for the consideration of the assignment, is merely equitable. And these are rights entirely distinct' — to which the rule as to equal equities will not apply. The statute of assignor ents(,Siai. Law, 151,) reserves no equity to assignors, though it makes all equities of obligors, accrued before notice of the assignment, available against assignees.
^eaTsfthatheis a purchaser, for siderationfwifoout notice, as-¿en If proving the payment.
“{uity^to affect a party aii^ubs’equent'pur chaser, for a val-t¡on with0ut notice> should be strong® conclus;ve. The proof °n P°.mt> deemedsufhcien.t jn this case.
There is no proof that Royal ever paid any thing for the assignment from Babcock and Payne; and his plea, that he was a purchaser of the covenant, for a valuable consideration, without notice, devolved on him the bur-then of proving payment. Halstead vs. Bank of Kentucky, 4 J. J. Mar. 554.
But waiving this matter, we are of the opinion, that the evidence is sufficient to show, that he had due notice in due time. It would be altogether useless here to attempt an analysis of all the testimony. But, waiving other and positive proofs of notice, we will only suggest that, though it is evident that Royal had seen the land , ..- t, ° . .. , .. . , . . whiist Babcock lived on ornear it, and then had notice, he insists that he procured an assignment of the title , . , , . 1 . . ° ,, . bond before he had seen the land, and yet he has proved *58 by his own witness (Hanley,) that he had not bought the land until after Babcock had left Kentucky, and that the bond was assigned to him in some other State. Strong and conclusive as proof of notice should, in such a case, be required to be, we are inclined to think that, on a candid and careful scrutiny, it should be deemed sufficiently clear and satisfactory in this case.
Interest on a sum to be paid in building, is to be computed--not from the date of the covenant, but from the time, when the sum so to be paid, became due.
This court reversing a chancery cause, for an error in computing interest from a wrong date, remand it with directions, that the party have leave to show the true time, which does not appear in the record, by proof.
Where one party is allowed to supply a defect of proof, in a cause reversed and remanded, the like privilege should ie extended to the other party.
Nevertheless the decree of the Circuit Court cannot be affirmed.
The bonds or notes given by Robert Eastin to Miller, and to secure the payment of which the lien is asserted, have not been exhibited; and there is nothing in the record tending to show when they became due. Whether the express, or implied lien be enforced, interest on the sum of a thousand dollars should not be allowed from the date of the agreement for building the house, unless there be proof that the thousand dollars were then due. There being no such proof, the decree, in that particular, at least, whatever may be said of it in other respects, cannot be sustained. The case will therefore be remanded with instructions to ascertain when the sum of one thousand dollars, part of the consideration for Miller’s assignment, became due, or rather when each of the instalments of that aggregate sum, or of whatever aggregate sum Miller’s lien may cover, were, by the terms of the original contract, due and payable — of which fact the notes themselves would be the best evidence.
And as, from Grover’s deposition, there may be some ground for inferring that Miller had received from Babcock, the receipts of Howard and James W. Eastin for about two hundred and eighty five dollars, which had been advanced to them, on Eastin’s covenant to build the house, and that the amount of those receipts had been collected by Miller, and as a credit should be allowed for whatever may have been thus paid, if the payment was on account of the contract for the house or the land, it seems to be but equitable that, as leave will be given to Miller to take further proof as to interest, the other parties should be permitted, if they choose ■to do so, to take the proper steps for ascertaining the *59 truth of the case as to those receipts, and to obtain a credit if they shall be entitled to any on that account.
Decree reversed, and cause remanded for further proceedings and decree, consistent with the foregoing opinion.