MOREHEAD & BROWN for plaintiff; HARLAN for defendant.

---

Tiernan *vs.* Thurman.

ERROR TO CUMBERLAND CIRCUIT.

1. A purchaser of land is bound to take notice of the existence of all liens upon the land which appear upon the face of the papers which evidence the vendor's title.

2. Though the note of a third person be substituted for that of vendee, the lien of the vender is not thereby waived—*Honore's Ex'or vs. Bakewell,* 6, *B. Monroe,* 67—but continues.

3. A constructive notice of the existence of a lien is sufficient to maintain the lien of a vendor of land. *Thornton &c., vs. Knox's Ex'or*, 6, *B. Monroe*, 74; *Woodward vs. Woodward*, 7, *B. Monroe*, 116.

December 27.

Judge CRENSHAW delivered the opinion of the court.

Case stated, and question for decision.

In the year 1816 Thomas Thurman and wife conveyed to Thomas H. Harris some lands lying on Cumberland river. The deed expresses the consideration to be one dollar in hand paid. Afterwards, on the 25th day of June, 1817, Thomas H. Harris executed his title bond for the same lands to Peter Simmerman. This title bond contains the following recitals: " Whereas, I, Thomas H. Harris, of the city of Richmond, state of Virginia, having sold my undivided moiety of two tracts of land, in Cumberland county, state of Kentucky, to Peter Simmerman of said county and state; also, seven negroes, as per bill of sale to said Simmerman of this date, for and in consideration of said Simmerman's executing his two several notes to Thomas Thurman, thereby canceling mine of same dignity, and surrendering mine up to me, viz: one for $1,650, payable 26th February, 1819, and the other for $5,000, payable in three years after the death or decease of said Thomas Thurman's father and mother, John and Judeth Thurman, now residing on the largest tract, lying on Cumberland river, and situated opposite the town of Burksville— the smallest tract, lying on the headwaters of Illwill, through which the main road passes—they being the same lands which Thomas Thurman sold to me on the 23d February, 1816, and recorded in the Cumberland county court office, reference thereto had will more fully appear; also, for and in consideration of $2,000 to me in hand paid this day, by said Simmerman, and the execution of his note to me for $5,000, negotiable and payable twelve months after this date at the Glasgow Branch Bank."

The title bond then proceeds to bind Harris to make to Simmerman a deed with general warranty for all Harris' right and title to said land, provided Simmer-

man should not make default in lifting and paying the last mentioned two notes. This title bond was assigned by Simmerman to Tiernan, on the 12th day of Dec. 1821, the assignment reciting, that Harris was thereby empowered to make to Tiernan such deed as Harris had, by the bond, bound himself to make to Simmerman, on the fulfillment of the conditions therein mentioned, and reciting that Simmerman had complied with the conditions therein contained.

Said title bond, and the assignment thereof to Tiernan are both incorporated in the deed of Harris to Tiernan, made on the 1st day of April, 1822, and this deed recites that Simmerman had complied with the stipulations of said title bond.

John and Judith Thurman having departed this life, the latter of whom dying 1847, and three years having elapsed after her death, at which time the said bond of Simmerman to Thomas Thurman for $5,000, became due, and the bond being unpaid, this suit was instituted by Thomas Thurman, against the executor and heirs of said Tiernan, asserting a lien upon said land for the payment of said latter sum of $5,000; and the only question is, whether said lien exists or not.

That the note for the same amount, executed by Harris to Thurman, was executed in consideration of the land, we think there is no doubt. No proof of this fact was taken, but it is sufficiently manifest from the record. The title bond from Harris to Simmerman recites, that Thomas Thurman held a note on Harris for this amount, payable three years after the death of John and Judith Thurman, the father and mother of said Thomas, and that said John and Judith then resided upon a part of the land, and that the land was the same which had been previously sold by Thomas Thurman to Harris. And the deed from Harris to Tiernan, to whom the title bond had been assigned by Simmerman, recites that it is the same land conveyed by deed of gift from John Thurman to his said son Thomas. In this title bond from Harris to Simmerman, it is also recited, that a part of the

1. A purchaser of land is bound to take notice of the existence of all liens upon the land which appear upon the face of the papers which evidence the vendor's title.

consideration thereof, was the executing by Simmerman to Thomas Thurman his note for the sum of $5,000, thereby canceling Harris' note of the same "*dignity*," and surrendering Harris' note to him. After looking at these recitals, it seems to us that the conclusion is almost irresistable, that the note for $5,000, executed by Harris to Thomas Thurman, was executed in consideration of the land. It appears from the recital that John Thurman had conveyed the land, by deed and gift, to his son, Thomas Thurman; that John and Judith Thurman, the father and mother of Thomas, resided still upon a part of the land; that Thomas Thurman had sold it to Harris, and held Harris' note for $5,000, payable three years after the death of said John and Judith Thurman; and that, in the contract of sale of the same land by Harris to Simmerman, Simmerman was to take up this note and surrender it to Harris, and execute his own note of "same dignity" to Thomas Thurman. A man of ordinary care and prudence, in buying this same land from Harris, would inquire why John and Judith Thurman, after a conveyance to their son Thomas, still resided upon the land; why, the note was made payable not till the death, and not till three years after the death of John and Judith Thurman; and, on what account did Harris owe to Thomas Thurman this note of $5,000, if not for the land? Seeing these various recitals, and some of them of a singular character, and seeing that Harris had purchased the land from Thomas Thurman, and owed him $5,000, he must have concluded that the note was given by Harris to Thurman for the land. This court, in surveying these various recitals, are forced to the conclusion that the note from Harris to Thomas Thurman was executed in part consideration of the land, and of course it is our opinion that these same recitals, being in the title bond from Harris to Simmerman, which was assigned to Tiernan, and also in the deed from Harris to Tiernan, Tiernan must or ought to have come to the same conclusion. Tiernan had constructive notice

then that Harris had not paid the purchase money for the land; but, the same means by which he obtained information that Harris had not paid the consideration money, informed him that Simmerman, his vendor, had undertaken to lift the note of Harris from Thurman, and execute his own note in lieu thereof, for the consideration going to Harris; and, it is insisted that if constructive notice of the non-payment of the consideration money be sufficient, which is denied in argument, to preserve the lien, had no change in the attitude of the parties taken place, yet, as Simmerman did actually lift the note of Harris to Thurman, and execute his own note in lieu thereof, the claim upon Harris, which constituted the lien, being thereby paid off and extinguished, the lien was also extinguished, and the case of *Calcord vs. Seamonds*, 6 *B. Monroe*, 265, is referred to as sustaining this position. But, without remarking particularly upon that case, it is sufficient to say, that the facts upon which that case was decided are not analagous to the facts of this case. The case under consideration bears a much more striking analogy to the case of *Honore's Executor vs. Bakewell*, &c.. 6 *B. Monroe*, 67; and we think it will be found, upon an examination of that case, that the principle decided in reference to a similar change in the attitude of the parties, is decisive of that part of the present controversy, resulting from an alteration in the condition of the parties, by the substitution of the note of Simmerman for that of Harris.

It appears in the case of Honore's Ex'or vs. Bakewell, *supra*, that Honore sold and conveyed to Bell & Barbaroux two lots in Louisville; Barbaroux then sold his interest to Bell, and Bell afterwards sold and conveyed designated parts of the lots to Bakewell, giving Bakewell the right to execute his notes for the purchase money directly to Honore, provided he produced an acquittance to Bell for the amount, and Bakewell, instead of executing his notes to Bell, his vendor, elected to execute his notes for the purchase money to Honore; the original vendor, and procure

2. Though the note of a third person be substituted for that of vendee, the lien of the vendor is not thereby waived— *Honore's ex'or. v. Bakewell*, 6 *B. Monroe*, 67—but continues.

an acquittance for that amount to Bell; and afterwards Bakewell executed a deed of mortgate to A. & O. Hite for the parts of the lots purchased by him from Bell; and in the contest between Honore and the Hites' as to a lien on the part of Honore for the notes given to him by Bakewell, upon the land conveyed to the Hites', it was decided, that upon the sale of Bell to Bakewell the election of the latter to pay to Honore the consideration of his purchase, and the acquiescence of Honore in this arrangement, and his acceptance of the note of Bakewell, and the acquittance of Bell from that amount, a lien on the parcels of the lots purchased by Bakewell was raised in favor of Honore for the amount of the consideration so promised to be paid to him; that, had Bell received Bakewell's notes for the consideration, a lien would be implied in his favor; and, if a lien would have been implied in favor of Bell, had the note for the consideration been payable to him, there was no reason why Bell might not sell to Bakewell, stipulating that he might pay to Honore the consideration, and why his direct promise to Honore for the payment of the consideration would not raise a lien in favor of Honore for the payment, as well as in favor of Bell.

Now, in the sale and conveyance from Harris to Simmerman, it was stipulated that Simmerman, instead of executing his note for the purchase money directly to him, should execute his note to Thurman, and, thereby, acquit Harris from his note to Thurman for the same amount. This arrangement was accepted by Thurman, and he took the note of Simmerman and surrendered that of Harris. Had the note been executed directly to Harris it is clear that he would have had a lien upon the land for its amount, and, it may be said, as in the case of Honore's Ex'or *vs.* Bakewell, *supra,* that if a lien would have been implied in favor of Harris, had the note for the consideration been payable to him, there can be no reason why Harris might not sell to Simmerman, stipulating that he might pay to Thurman the consideration, and

why his note to Thurman for the payment of the consideration would not raise a lien in favor of Thurman for the payment, as well as in favor of Harris. We can perceive no difference in principle between the two cases. If the acquittance of Bell by Honore, to the extent of the direct promise to him of Bakewell, would not prevent a lien in favor of Honore against Bakewell and his vendees, neither can the acquittance of Harris by Thurman prevent a lien in favor of Thurman as against Simmerman and his vendee, Tiernan.

We think, however, that in the case of Honore's Ex'or *vs.* Bakewell, the court could with more propriety have said that the lien of Honore was not defeated, but *continued*, notwithstanding the arrangement, than to have said a lien *was raised* in his favor by the arrangement. It was fair to presume that Honore did not intend to relinquish his lien already existing, but to confine it to the parcels sold to Bakewell, to the extent of the consideration agreed to be paid by him. And we would say, in the present case, that the original lien of Thurman still existed, there being nothing to show that he intended to waive or abandon it. But, as a deed was made by Thurman to Harris, expressing a consideration of only one dollar, and acknowledging that to be paid, it is contended that Tiernan would of course look back to this deed, and there perceiving that the only consideration mentioned from Harris to Thurman had been paid, he would take it for granted that nothing was due from Harris to Thurman for the land. But it is manifest that this consideration was merely nominal, and, instead of throwing a sub-purchaser off his guard, this circumstance ought rather to put him upon the *"look out"* as to the true consideration. And, if the facts recited in the title bond to Simmerman, assigned to Tiernan, and incorporated in the deed to him, and the recitals of the deed itself, might not be deemed sufficient notice of the non-payment of the purchase money to Thurman, the recital of the merely nominal

'consideration in the deed of Thurman to Harris ought rather to add to the force of these recitals, than to detract from their strength. So, we think there can be no doubt, as already said, that the facts and circumstances brought to the knowledge of Tiernan at and before the time he received his deed, must be regarded as sufficient to give him constructive notice, at least, that the consideration money, as between Harris and Thurman, had not been paid.

3. A constructive notice of the existence of a lien is sufficient to maintain the lien of a vendor of land. *Thornton, &c. v. Knox's ex'or.*, 6 B. Monroe, 74; *Woodward v. Woodward*, 7 B. Monroe, 116.

It is argued, however, that constructive notice is insufficient to maintain the lien, and the case of *Royal &c. vs. Miller*, 3 Dana 56, is cited in support of this assumption. Without adverting particularly to that case, we would remark, that even if it decides, as contended for, it has been overruled by subsequent decisions. It is not only not necessary that notice to a sub-purchaser of the non-payment of the consideration should be strong and conclusive, as intimated in the case of Royal &c., vs. Miller, *supra*, but it is enough if a sufficiency of facts be brought to his knowledge to put him upon inquiry, and to enable him by the exercise of reasonable diligence to ascertain whether the consideration money had or not been paid to the original vendor—*Honore's Ex'or vs. Bakewell, &c., supra.* That constructive notice to a sub-vendee is sufficient to enable the original vendor to successfully assert his lien against him, is decided also in the cases of *Thornton &c. vs. Knox's Ex'or,* 6 B, Monroe, 74, and *Woodward vs. Woodward &c.,* 7 B. Monroe, 116. That there was enough in the recitals of the title papers brought to the knowledge of Tiernan not only to put him upon inquiry as to the payment of the consideration to Thurman, but enough to show that the consideration of his sale to Harris had not been paid, we have already said. And, there being no circumstance in the cause tending to prove that Thurman intended to waive his lien, it still subsists upon the land, and the circuit court did not err in coming to the conclusion that the land was subject, in the hands of Tiernan's

heirs and representatives, to the payment of the note set up in the bill.

Wherefore, the decree is affirmed.

HARLAN for plaintiff; BELL, MONROE, and CALDWELL for defendant.